## Sun Life Assur. Co. of Canada v. Damron.

May 24, 1946.

Wm. Marshall Bullitt, Robert L. Blackwell, and Bullitt & Middleton for appellant.

J. P. Hobson, Jr. and Harman & Hobson for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Sun Life Assurance Company of Canada appeals from a judgment wherein the appellee, Gertrude Damron, widow and beneficiary of George Dewey Damron, was awarded $938.84 under a group policy of insurance carried by the Pike County Board of Education for its participating employees.

The facts are stipulated. The cause was tried by the court without the intervention of a jury. On December 1, 1936, Sun Life Assurance Company issued to the Pike County Board of Education a group policy. George Dewey Damron, the husband of the plaintiff below, was one of the employees accepted under the group policy. A certificate was issued to him in which Gertrude Damron, his wife, was named as beneficiary. On May 14, 1942, the Board of Education notified the insurance company that it would no longer carry the policy beyond the next anniversary, which was December 15th of that year. The policy lapsed and was no longer in effect after December 15, 1942. George Dewey Damron continued to teach in the county school system during the school years commencing September 1942 and 1943. When he learned that the County Board would no longer carry the master policy beyond December 15, 1942, he went to a local agent of the insurance company and placed in the agent's hand his certificate and his card showing the payment of premiums on the term rate up to December 15, 1942, and asked the agent to have the term certificate converted into a policy known as ordinary life insurance. The company refused to issue the policy. During all the time the policy was in effect, and during the time following the lapse of the policy up until two or three days prior to his death on March 9, 1944, he continued his employment with the Board of Education. His widow, who was the named beneficiary, brought this action against the company to recover the sum of $1,000 less $62.16 premium, which he had tendered and would have been required to pay had the converted policy been issued. The court below found in her favor.

The basis of the action was that portion of the pol-

icy known as the conversion clause, which reads as follows: "IX.—Conversion.—When the assurance on the life of any employee assured hereunder shall terminate by reason of such employee leaving the service of the Employer while this policy is in full force and effect, the Company shall, on written request received from such employee within thirty-one days of the period during which death would have resulted in a valid claim under this policy, accompanied by payment of the first premium, issue a policy on the life of such employee on any form of life or endowment assurance (excluding term assurance) then issued by the Company, but without the total and permanent disability benefit or the double indemnity accident benefit. Such policy shall be for the same amount of assurance as the employee was assured for under this policy at the time of said termination of employment, and the rate of premium shall be the rate charged by the Company according to the table of rates then in use applicable to the class of risk to which such employee belongs and attained age of such employee. No medical examination shall be required. This conversion privilege shall be in lieu of all other benefits under this policy."

The appellant takes the position that the group policy expressly limits its conversion privilege to a participating employee whose insurance under it "shall terminate by reason of such employee leaving the service of the employer while the group policy is in full force and effect."

The appellee insists that the principle value of term insurance is the preservation of the insurability through the right to convert and that a fair construction of the policy means that the employee should have the right to convert it into term insurance when he was no longer covered under the group policy of term insurance. He insists the policy should be construed strictly against the insurer and liberally in favor of the insured. He cites a sizeable list of cases in support of his contentions, all of which generally support his view, but none of which go directly to, or are decisive of the question herein.

It will be noted that this is a contractual matter. The contract gives a right of conversion, but in that right it specifically provides that two conditions must concur before an employee can convert. His insurance

under the group policy must have terminated (1) by reason of his leaving the service of the employer, and (2) that it must have happened while the policy was ·in full force and effect. That conversion right is a privilege granted by the contract itself, to be exercised under the provisions of, and in accordance with, the conditions and limitations therein. It would be a rather unusual position to say that under one portion of the contract he claims the benefit and at the same time denies and rejects as illegal an unfavorable portion of the policy. Obviously, Mr. Damron had a conversion right but that right came to him under the contract only upon termination of service with the employer and providing the policy was in full force and effect. There could be no question but that if Mr. Damron had terminated his employment during the life of the policy, he would have been entitled to the conversion policy. But that he did not do.

There evidently are some sound reasons back of the provision that forbids conversion while a participating employee remains in the service of the employer. To permit conversion while still in the service of the employer would effect a disturbance of, and tend to destroy the character of the group as a whole. A number of states have gone so far as to enact regulatory group insurance laws. By legislative enactment they have forbidden the privilege of an employee to convert while in the service of the employer, and some of them specify that he shall have the right to convert only in the case of termination of employment. To do otherwise would be destructive of group insurance. If in a group, the healthier of the employees should decide to convert and leave only the physically impaired who have not converted, there would be a noticeable disturbance in the average impairment of the group, thus affecting the interest of all the members of the group. If he should terminate his employment and then ask for the conversion, doubtless another employee would take his place, in which event the group, numerically at least, would be maintained. The very fact that he must terminate his employment before he becomes eligible to convert operates as a deterrent from quitting his job, and effectively operates to maintain the character of the group. See Thompson v. Pacific Mills, 141 S. C. 303, 139 S. E. 619, 55 A. L. R. 1237; Gephart's Principles of Insurance.

We therefore, conclude that any right to convert

must arise from the contract itself, and since the contract specifically sets out the conditions and limitations upon the participating employee's right to convert his group insurance, he must, therefore, have necessarily complied therewith. He continued working for his employer long after the group policy had lapsed. He undertook to convert while he was yet in the employment of the Board of Education. This, under the terms of the conversion clause, he could not do.

Wherefore, the judgment is reversed.